Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALICIA BIEDENKAPP,**<br><br>     **Plaintiff,**<br><br>  v.<br><br>**JOHN S. HOGAN, MARILYN JOHNSON, EDWARD A. JEREJIAN, JOHN LYONS, ESQ., PAUL KAUFMAN, ESQ., CARLOS SOTO, MARIA GUITIERREZ, ANTOINETTE KQUIRA, DUTY REJIG, INC., QUATTRO INTERESTS, LLC, JOHN A. QUATTRO, RICHARD V. MESSANO, SR., RICHARD V. MESSANO, JR., SCOTT D. BULLOCK, ESQ., DANA MARKS, ESQ., ANTHONY CURETON, DEPUTY K. NATALIZO, DECOTIIS, FITZPATRICK & COLE LLP,**<br><br>     **Defendants.** | Civil Action No.: 25-9466 (ES) (SDA)<br><br><br>OPINION |

**SALAS, DISTRICT JUDGE**

It appearing that:

  1.  Before the Court is *pro se* plaintiff Alicia Biedenkapp's ("Plaintiff") "Emergency Petition for Writ of Mandamus", (D.E. No. 1 ("Petition")), "Time Sensitive and Emergent Presentment (219 Pages) Declaration, and Proposed Order", (D.E. No. 10, ("Emergent Presentment")), Emergency Motion for a Preliminary Injunction (D.E. No. 12 ("PI Motion")), "Supplemental Pleading to Amend Caption and Add Parties", which the Court will construe as a motion for leave to file an amended pleading pursuant to Federal Rule of Civil Procedure 15, (D.E. No. 13 ("Motion to Amend")), and "Emergency Application to Advance Review Date; for

Immediate Administrative Stay & Restoration; or; in the Alternative, Ex Parte TRO and Writ of Assistance." (D.E. No. 15 ("Emergency Application")).

2.  Plaintiff commenced this action by filing her Petition on June 3, 2025. (D.E. No. 1). While Plaintiff originally sought to proceed *in forma pauperis*, (D.E. No. 1-1), she later paid the requisite filing fee on July 30, 2025. On that date, the Clerk of the Court issued a blank summons to enable Plaintiff to effectuate service on Defendants. To date, none of the defendants have appeared in this matter and the record does not reflect whether Plaintiff has served any defendant.

3.  Though Plaintiff's Petition itself lacks critical background information (e.g., the full procedural history for the state proceedings she challenges therein) necessary to put her application into context, the Court has endeavored to collect relevant information from the exhibits attached thereto, as well as Plaintiff's various other filings. Despite those efforts, and due in no small part to Plaintiff's attempts to litigate these issues in multiple different cases in this District and in other fora, both the relevant factual and procedural background remain murky.

4.  In her Petition, Plaintiff alleges that she "holds a vested equitable and beneficial interest in the real property located at **306 Beech Street, Washington Township, NJ**, [(the "Property")] conveyed lawfully and placed in private trust." (Petition ¶ 1 (emphasis in original)). Plaintiff alleges that she attempted to submit multiple documents reflecting that interest for public recording between 2021 and 2024, and that certain defendants "refused and obstructed these lawful filings." (*Id.* ¶¶ 2–3). It appears that, on or about March 25, 2024, a judge of the New Jersey Superior Court, Chancery Division entered a judgment concerning the Property in a foreclosure action bearing the docket number F-006003-23. While the Court could not locate the judgment

itself in the record for this matter, Exhibit K to Plaintiff's Petition, a Writ of Possession dated February 5, 2025, states, in pertinent part:

> **WHEREAS** on the 25th day of March 2024, by a certain judgment of the Superior Court of New Jersey, Chancery Division, Bergen County, in a cause therein pending, wherein US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST, is the plaintiff and THOMAS J. HOKENSON; TD BANK NA; UNKNOWN OCCUPANTS #1 -10 NIK/A JANE DOE (NAME REFUSED), OCCUPANTS is the defendant, it was ordered and adjudged that the plaintiff, its assignee, or the successful bidder at Sheriffs Sale, recover the possession of the [Property] . . .

**(**D.E. No. 1-4 at 76–77 ("Writ of Possession")).

5.     Plaintiff alleges that she "removed" the foreclosure action to federal court on May 14, 2024, commencing Civil Action No. 2:24-6165. (Petition ¶ 5). While Plaintiff alleges that she "filed a **Notice of Removal**" on that date, (*id.* (emphasis in original)), the Court's records reflect otherwise. Rather, a plaintiff identified as "Chief Israel X in [*sic*] Behalf of the Alicia Hanford Estate Trust Tribe" commenced Civil Action No. 2:24-6165 by filing a motion seeking to "vacate foreclosure, eviction / ejectment with prejudice". (D.E. No. 1 in Civil Action No. 2:24-6165). Nothing in that filing invoked 28 U.S.C. § 1446, let alone provided "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action" as required under 28 U.S.C. § 1446(a). (*Id.*). While the Civil Cover Sheet that Chief Israel X submitted with that motion identified "F00600323" as a "related case," it did not indicate that the petition was intended as a removal. (D.E. No. 1-2 in Civil Action No. 2:24-6165 (leaving the "removed from state court" box unchecked in the "Origin" section of the form)). Likewise, when identifying the "Cause of Action" on the Civil Cover Sheet, Chief Israel X wrote: "This case stems from an unlawful eviction/ejectment, foreclosure, sheriff

3

sale," (*id.*), demonstrating that the plaintiff was seeking relief related to the foreclosure proceedings rather than a removal of the foreclosure proceedings themselves. In short, Chief Israel X did not remove the foreclose action, he commenced a new action ostensibly intended as a collateral attack on the state court proceedings.[1]

6. Plaintiff alleges that Defendant Anthony Cureton unlawfully conducted a Sheriff's Sale of the Property on June 7, 2024, despite the "removal" described in the preceding paragraph. (Petition ¶ 5). It appears that Defendant Duty Rejig, Inc. purchased the Property during that sale. (Writ of Possession at 2). On or about February 5, 2025, the Superior Court of New Jersey, Chancery Division, issued a Writ of Possession commanding the Sheriff of Bergen County to "cause DUTY REJIG, INC., to have possession of [the Property] . . ." (*Id.*). In her Petition, Plaintiff sought a writ a mandamus (i) declaring the Writ of Possession void; and (ii) prohibiting Defendants from taking steps to enforce that Writ of Possession or otherwise interfere with Plaintiff's interests in the Property. (Petition at 3).

7. It is unclear whether Plaintiff ever utilized state court appellate mechanisms to seek review of the March 25, 2024 Order in the foreclosure action or any related writs.

8. On July 30, 2025, Plaintiff filed an "Emergency Motion for a Temporary Restraining Order" seeking to prohibit the Bergen County Sheriff's Office from carrying out its plan to enforce the Writ of Possession at 10:00 a.m. that day. (D.E. No. 4). As Plaintiff's motion was not entered on the docket until 1:18 p.m. (i.e., several hours after the Sheriff's Office's

---

[1] The Court dismissed Civil Action No. 2:24-6165 by Order dated August 14, 2024. (D.E. No. 5 in Civil Action No. 2:24-6165). That dismissal was *without prejudice* to Chief Israel X's ability to file an amended complaint within 30 days. (*Id.* at 2). When Chief Israel X failed to do so, the Court dismissed the case *with prejudice* by Order dated September 20, 2024. (D.E. No. 6). On July 30, 2025, Chief Israel X filed *both* a Motion to Reopen Final Judgment, (D.E. No. 8 in Civil Action No. 2:24-6165) and a Notice of Appeal of the Court's September 20, 2024 Order. (D.E. No. 9 in Civil Action No. 2:24-6165). That appeal remains pending to date.

scheduled execution), however, the Court denied her application as moot by Order dated July 30, 2025. (D.E. No. 9).

9. On August 14, 2025, Plaintiff filed the Emergent Presentment. In that submission, Plaintiff confirmed that the Bergen County Sheriff executed the Writ of Possession on July 30, 2025, removing certain of Plaintiff's personal property, changing the locks on the premises, and otherwise depriving Plaintiff of access to the Property. (Emergent Presentment at 3–4). Plaintiff requested that the Court enter an order retroactively invalidating the Writ of Possession, restoring her possession of the Property, and granting various other forms of injunctive relief. (*Id.* at 12–13). The Emergent Presentment contains several "counts," which appear to be the legal theories underlying Plaintiff's application. (*Id.* at 4–11). It is unclear whether Plaintiff intended her Emergent Presentment to serve as a motion for leave to amend her pleading.

10. On August 22, 2025, Plaintiff filed her PI Motion, seeking essentially the same injunctive relief described in her Emergent Presentment. (*See generally* D.E. No. 12). On August 27, 2025, Plaintiff filed *yet another* emergent submission—the Emergency Application—again seeking essentially the same injunctive relief (i.e., restoring Plaintiff's interest in the Property and prohibiting others from interfering with that interest). (*See generally* D.E. No. 15). In that application, however, Plaintiff specified that she sought an immediate review and relief on an *ex parte* basis. (*Id.*).

11. While Plaintiff has framed her various applications in different ways (e.g., applications for a preliminary injunction or a temporary restraining order), each seeks essentially the same injunctive relief on an emergent basis. Regardless of their respective titles, the same legal standards apply to Plaintiff's various submissions.

12. Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. "If there is a possibility that irreparable injury will occur before the hearing on a preliminary injunction required by Rule 65(a) can be held, a temporary restraining order may be available under Rule 65(b)." *Int'l Foodsource, LLC v. Grower Direct Nut Co.*, No. 16-3140, 2016 WL 4150748, at *6 (D.N.J. Aug. 3, 2016). Such "[i]njunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *See Westchester Fire Ins. Co. v. Glob. Real Constr., LLC*, No. 09-0207, 2009 WL 137414, at *1 (D.N.J. Jan. 20, 2009) (quoting *Kos Pharm. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). "The standard used to evaluate whether the issuance of a temporary restraining order is warranted is the same as that used to evaluate whether the issuance of a preliminary injunction is appropriate." *Int'l Foodsource, LLC*, 2016 WL 4150748, at *6.

13. Specifically, a court may grant temporary restraints only if a party shows:

> (1) that it will likely succeed on the merits;
> (2) that it will suffer irreparable harm if the injunction is denied;
> (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and
> (4) that the public interest favors such relief.

*Spectrum Produce Distrib., Inc. v. Fresh Mktg., Inc.*, No. 11-6368, 2011 WL 13063669, at *2 (D.N.J. Nov. 1, 2011). That test is conjunctive, such that "[a] plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters. Inc.*, 176 F.3d 151, 153 (3d Cir. 1999); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."). "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.

Nonetheless, district courts should award preliminary injunctive relief only upon weighing all four factors." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

14. The Court further notes that the primary purpose of a preliminary injunction is the maintenance of the status quo until a decision on the merits of a case is rendered. *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994). Where, as here, the movant requests to alter the status quo, that party must meet a heavy burden. *See Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980); *see also Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008).

15. Here, the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits of her claims. As noted above, Plaintiff asks the Court to invalidate the Writ of Possession that the Superior Court of New Jersey issued pursuant to a prior judgment of that Court, to enjoin Defendants from acting in accordance with that writ/judgment, and to restore Plaintiff's alleged interest in the Property. Plaintiff's claims fail for at least two independent reasons.

16. First, and most critically, the *Rooker-Feldman* doctrine bars the Court from granting Plaintiff's proposed relief. As one Judge in this District aptly summarized:

> It is well-settled law that this Court is prohibited by the *Rooker–Feldman* doctrine from providing relief in the [f]ederal [a]ction that would effectively reverse the decisions, directly or indirectly invalidate the determinations, prevent the enforcement of the orders, or void the rulings issued by the state court in the [underlying eviction action].

*Abreu v. Ochoa-Salazar*, No. 17-3109, 2017 WL 1900729, at *1 (D.N.J. May 8, 2017) (collecting cases). Indeed, the Undersigned has previously found that "there is no authority for this Court to interfere with the propriety of state court proceedings or judgments, including the future or past foreclosure of property. *Anderson v. Stern & Eisenberg, P.C.*, No. 24-11198 (ES), 2025 WL

1505327, at *3 (D.N.J. May 27, 2025). If Plaintiff seeks to challenge decisions of the New Jersey Superior Court, her recourse is to file appropriate motions and appeals in the state court system. *Abreu*, 2017 WL 1900729, at *1 ("The proper way for [the plaintiffs] to proceed would be to seek review and relief through the state motion process and state appellate process, and then to seek certiorari directly to the United States Supreme Court.") (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414–16 (1923)); *see also Newton v. Mizell*, No. 09-0470, 2009 WL 311854, at *3 (D.N.J. Feb. 5, 2009) ("The crux of Plaintiffs' claims lies in their allegation that the New Jersey Courts violated the Fifth and Fourteenth Amendments to the United States Constitution by deciding that they could be evicted. Under the *Rooker–Feldman* Doctrine, the correction of such an error, if committed, is properly the purview of the Supreme Court of New Jersey, and is outside the jurisdiction of this court."). In short, this Court lacks subject matter jurisdiction over the claims Plaintiff presents in her various filings. *See, e.g.*, *Bakshi v. Bergen Cnty. Superior Ct.*, 687 F. App'x 215, 218 (3d Cir. 2017) (noting that the District Court lacked subject matter jurisdiction over claims barred by the *Rooker-Feldman* doctrine); *Anderson*, 2025 WL 1505327, at *3 (dismissing claims barred by the *Rooker-Feldman* doctrine *with prejudice*). Plaintiff has not addressed the *Rooker-Feldman* doctrine in her submissions.

17. Second, even if the *Rooker-Feldman* doctrine did not apply, it appears that Plaintiff's primary argument regarding the validity of the Bergen County Sheriff's execution of the Writ of Possession fails on substantive grounds as well. Specifically, Plaintiff argues that the Bergen County Sheriff lacked authority to execute the Writ of Possession, because she "removed" the foreclosure action to federal court on May 14, 2024, and thus any further "state action was void

8

ab initio." (PI Motion at 1).  As discussed in detail in Paragraph 5, above, neither Plaintiff nor Chief Israel X removed the foreclosure proceeding in accordance with 28 U.S.C. § 1446.

18. As Plaintiff has failed to establish a likelihood of success on the merits of her claims, the Court must deny each of her pending requests for injunctive relief.  *P.C. Yonkers, Inc.*, 428 F.3d at 508.  The Court will not, therefore, discuss the remaining factors relevant to the analysis herein (i.e., irreparable harm, balancing of harms, and the public interest).

19. Turning to Plaintiff's Motion to Amend, the Court notes that Plaintiff seeks to add several new defendants based on their alleged involvement with the same underlying state court proceedings and Writ of Possession.  (*See generally* Motion to Amend).  For the reasons discussed herein with regard to Plaintiff's existing claims, this Court would lack subject matter jurisdiction over Plaintiff's proposed amended claims.  As the proposed amendment would therefore be futile, the Court must **DENY** Plaintiff's Motion to Amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (a court must grant leave to amend "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment"); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.").

20. Indeed, as the Court lacks subject matter jurisdiction over Plaintiff's current claims, and *any* potential amendment regarding those claims would be futile, the Court must dismiss this action, in its entirety, *with prejudice*.  *See, e.g.*, *Whipple-Bey v. New Jersey Dep't of Hum. Servs.*, No. CV 25-4151, 2025 WL 1975960, at *2 (D.N.J. July 16, 2025) (sua sponte dismissing case with prejudice where the plaintiff's claims were barred by the *Rooker-Feldman* doctrine); *see also Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017) ("In contrast to the

ordinary operation of our adversarial system, courts are obliged to notice jurisdictional issues and raise them on their own initiative.").

21. The Court recognizes that, by Order dated August 28, 2025, the Hon. Stacey D. Adams, U.S.M.J. addressed the Motion to Amend by directing Plaintiff "to file one amended complaint encompassing all of her claims against all defendants by September 12, 2025." (D.E. No. 16). As discussed herein, however, any claims challenging state court orders or efforts to enforce those orders would be barred by the *Rooker-Feldman* doctrine. As those are the only claims Plaintiff has articulated in any of her submissions to date, any efforts to replead them in a subsequent pleading would likewise be futile. As the Court has now denied the Motion to Amend outright and will dismiss this matter with prejudice, Judge Adams's directive to file an amended pleading by September 12, 2025, is vacated as moot. To the extent Plaintiff wishes to file other, non-barred claims, which would necessarily involve a wholly different set of facts and circumstances, she may do so by commencing another civil action.

22. Based upon the foregoing, each of Plaintiff's pending applications, (D.E. Nos. 10, 12, 13 & 15), are **DENIED** and this action is dismissed *with prejudice*. An appropriate order follows this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**
**Date:** September 5, 2025
